**IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF SOUTH CAROLINA
CHARLESTON DIVISION**

| | | |
|---|---|---|
| ROGER GILLIARD, | ) | |
| | ) | No. 2:12-cv-00867-DCN |
| Plaintiff, | ) | |
| | ) | |
| vs. | ) | |
| | ) | **ORDER** |
| GREAT LAKES REINSURANCE (U.K.) PLC, | ) | |
| | ) | |
| | ) | |
| Defendant. | ) | |
| | ) | |

This matter is before the court on a motion to compel brought by plaintiff Roger Gilliard and a corresponding motion to quash brought by defendant Great Lakes Reinsurance (U.K.) PLC (Great Lakes). For the reasons that follow, the court grants in part and denies in part the motion to compel as well as the motion to quash.

## I. BACKGROUND

Gilliard filed a complaint on March 22, 2012, alleging that an accidental fire burned down his home but that his homeowners' insurer, Great Lakes, improperly refused to pay benefits. During discovery, a dispute arose concerning two subpoenas *duces tecum* served on agents of Great Lakes that Great Lakes moved to quash.

In his motion to compel, Gilliard seeks an order requiring Great Lakes and two of its agents, Adair Horne & Associates (Adair Horne) (an adjusting agency for Great Lakes, see Crouch Dep. 11:9-11, 16:23-17:1) and Johnson & Johnson, Inc. (Johnson & Johnson) (a managing general agent for Great Lakes, see Brown Aff. ¶ 4), to fully respond to his requests for production of documents. The court held a hearing on April 3, 2013 and ordered production of certain reports and other documents withheld by

1

defendant.  Consistent with the court's order, counsel for defendant produced the remaining withheld documents for *in camera* review.

Defendant objects to production of the remaining documents on the bases of attorney-client privilege and work product protection.

## II.   ATTORNEY-CLIENT PRIVILEGE

In diversity cases, the application of the attorney-client privilege is governed by state law.  Fed. R. Evid. 501.  "The attorney-client privilege protects against disclosure of confidential communications by a client to his attorney."  State v. Owens, 424 S.E.2d 473, 476 (S.C. 1992).  "[T]he burden of establishing the [attorney-client] privilege rests upon the party asserting it."  Wilson v. Preston, 662 S.E.2d 580, 585 (S.C. 2008).

At the hearing held on April 3, 2013, Attorney Edward Pritchard, counsel for Great Lakes, represented to the court that he was also acting as counsel for Adair Horne and Johnson & Johnson.  In only one of the withheld documents is Attorney Pritchard's law firm included in the correspondence.  Specifically, **Document JNJ_00076** contains an email from Christie Holderness of Pritchard & Elliott to Hilary Brown, a claims supervisor for Johnson & Johnson.  The email states in part, "Enclosed herewith is this firm's invoice relative to the above matter" regarding Gilliard.  The document also contains an email from Ms. Brown addressed to "claims@jjins.com," in which Ms. Brown forwards the previous email.  Both emails were sent on May 2, 2012.

Courts have held that correspondence relating to a legal services bill does not qualify under the attorney-client privilege.  See United States v. Under Seal, 774 F.2d 624, 628 (4th Cir. 1985) (finding it well established that the "attorney-client privilege normally does not extend to the payment of attorney's fees and expenses"); Miller v.

2

Pruneda, No. 3:02-cv-42, 2004 WL 3951292, at *9 (N.D. W. Va. Nov. 5, 2004) ("[T]his is a bill for attorneys' fees and does not qualify under the attorney-client privilege as the information is not advice sought by the client from his attorney in his capacity as a legal adviser."). Because it is not subject to the attorney-client privilege, **Document JNJ_00076** must be produced.

The remaining withheld documents are not subject to the attorney-client privilege. See Old Second Nat'l Bank of Aurora v. Commercial Union Midwest Ins. Co., No. 99 C 3941, 1999 WL 1068635, at *2 (N.D. Ill. Nov. 18, 1999) ("It is well-settled that internal communications between an insurer's employees regarding a claim and the events surrounding it which are not directed to its counsel are not protected by the attorney-client privilege.").

### III.   WORK PRODUCT DOCTRINE

Federal law governs the work product doctrine.  The doctrine protects from discovery any "documents and tangible things that are prepared in anticipation of litigation or for trial by or for [a] party or its representative (including the . . . party's attorney, consultant, surety, indemnitor, insurer, or agent)." Fed. R. Civ. P. 26(b)(3)(A). The party claiming work product protection has the burden of establishing entitlement to the protection.  In re Martin Marietta Corp., 856 F.2d 619, 626 (4th Cir. 1988).

"The application of the work product doctrine is particularly difficult in the context of insurance claims."  Kidwiler v. Progressive Paloverde Ins. Co., 192 F.R.D. 536, 541-42 (N.D. W. Va. 2000).  "[I]nsurance companies have a duty to investigate, evaluate, and adjust claims made by their insureds.  The creation of documents during this process is part of the ordinary course of business of insurance companies, and the

fact that litigation is pending or may eventually ensue does not cloak such documents with work-product protection." HSS Enters., LLC v. Amco Ins. Co., No. C06-1485-JPD, 2008 WL 163669, at *4 (W.D. Wash. Jan. 14, 2008) (citation omitted). "Because an insurance company has a duty in the ordinary course of business to investigate and evaluate claims made by its insureds, the claims files containing such documents usually cannot be entitled to work product protection." Pete Rinaldi's Fast Foods, Inc. v. Great Am. Ins. Cos., 123 F.R.D. 198, 202 (M.D.N.C. 1988); see also St. Paul Reinsurance Co. v. Commercial Fin. Corp., 197 F.R.D. 620, 636 (N.D. Iowa 2000) ("[A]n insurer's investigation of whether *coverage* exists is required and the conduct of that much of its investigation is assuredly in the ordinary course of its business, not 'in anticipation of litigation.'").

For the work product doctrine to apply, "[t]he document must be prepared *because* of the prospect of litigation when the preparer faces an actual claim or a potential claim following an actual event or series of events that reasonably could result in litigation." Nat'l Union Fire Ins. Co. of Pittsburgh, Pa. v. Murray Sheet Metal Co., 967 F.2d 980, 984 (4th Cir. 1992). The proponent of work product protection must establish that the "driving force behind the preparation of each requested document" is the prospect of litigation. Id.

After conducting an *in camera* review of the remaining documents at issue, the court makes the following rulings:

**Document JNJ_00066** is a one-page letter from the South Carolina Department of Insurance to Great Lakes dated March 29, 2012. The document was not prepared by

Great Lakes, Adair Horne, Johnson & Johnson, or any of its representatives. Therefore, it is not subject to work product protection and must be produced.

**Document JNJ_00067** is a letter sent by the Driggers Law Firm, counsel for Gilliard, to Michael Crouch, adjuster for Adair Horne. The document was not prepared by Great Lakes, Adair Horne, Johnson & Johnson, or any of its agents or representatives. Therefore, it is not subject to work product protection and must be produced.

**Document JNJ_00070** contains two emails between Adair Horne and Johnson & Johnson representatives concerning the employment of defense counsel in the Gilliard action. This document is protected by the work product doctrine. See Atoka Precision Mach. Shop, LLC v. Peerless Ins. Co., No. CIV-11-445-FHS, 2013 WL 817279, at *2 (E.D. Okla. Mar. 5, 2013) (holding that "claims file notes prepared post-litigation concerning the employment of defense counsel" were subject to work product privilege).

**Document JNJ_00071** contains three emails regarding Gilliard's claim following his institution of a lawsuit. Courts have held that emails such as these are "immune from disclosure under the work product doctrine" because they "consist of communications between Defendant's representatives . . . in conjunction with Plaintiff's loss and claim after Defendant reasonably perceived that the circumstances could result in litigation." Chambers v. Allstate Ins. Co., 206 F.R.D. 579, 588 (S.D. W. Va. 2002). This document is protected.

**Document JNJ_00072** contains three emails concerning the employment of defense counsel in the Gilliard action. This document is protected.

**Documents JNJ_00073** and **JNJ_00074** contain four emails regarding the complaint filed by Gilliard. While defendant argues these documents can be

5

"summarized as internal claims notes of Great Lakes and internal communications between Great Lakes employees concerning claims against Great Lakes by the Plaintiff," there are employees of companies other than Great Lakes, Adair Horne, and Johnson & Johnson included in the email chain. Ordinarily, "the proponent must provide specific factual support for its assertion" of privilege, as courts "will not speculate as to the reasons the documents were created or construct a scenario under which the documents could arguably be privileged." Neuberger Berman Real Estate Income Fund, Inc. v. Lola Brown Trust No. 1B, 230 F.R.D. 398, 418 (D. Md. 2005). Here, counsel for Great Lakes represented at the hearing that Bell & Clements Ltd. (Bell & Clements) is an agent or representative of Great Lakes.[1] On this basis, the court concludes that these emails were prepared in anticipation of litigation by representatives of Great Lakes. This document is protected.

**Document JNJ_00075** contains an email from Samantha Eatwell of Bell & Clements, addressed to Hilary Brown of Johnson & Johnson, regarding Gillard's complaint. Defendant has represented that Bell & Clements is its agent. In addition, it is apparent that the driving force behind preparation of these emails was litigation. Therefore, this document is protected.

**Document JNJ_00076** was discussed above and is not privileged.

**Document JNJ_00077** is an email between representatives of Adair Horne and Johnson & Johnson. The body of the email contains the message, "Eighth report is attached," in reference to a report prepared by Michael Crouch, an adjuster for Adair Horne. This court already ruled that the Eighth Report is not privileged because it was

---

[1] In addition, in her deposition, Hilary Brown stated that Bell & Clements is a "broker for Great Lakes." Brown Dep. 16:6.

6

made in the ordinary course of business. Similarly, the "driving force" behind the email that forwards this report is not the prospect of litigation, but the ordinary course of business of adjusting an insurance claim. This document must be produced.

**Document JNJ_00079** contains an email from Samantha Eatwell, claims adjuster at Bell & Clements, addressed to Hilary Brown of Johnson & Johnson, regarding Gilliard's claim. Defendant has represented that Bell & Clements is its agent or representative. However, it is not clear that the driving force behind preparation of this email was litigation. Instead, it appears to have been created in the ordinary course of claim adjusting and payment. Therefore, this document must be produced.

**Document JNJ_00081** resembles **Document JNJ_00077** and notes that "[t]he ninth report is attached." For the reasons that **Document JNJ_00077** must be produced, **Document JNJ_00081** must also be produced.

**Document JNJ_00082** contains email correspondence between Hilary Brown of Johnson & Johnson and Samantha Eatwell of Bell & Clements. Defendant has represented that Bell & Clements is its agent or representative. However, it is not clear that the driving force behind preparation of these emails was litigation. Instead, they appear to have been created in the ordinary course of claim adjusting and payment. Therefore, this document must be produced.

**Document JNJ_00083** resembles **Document JNJ_00077** and notes that "[t]he tenth report is attached." For the reasons that **Document JNJ_00077** must be produced, **Document JNJ_00083** must also be produced.

**Document JNJ_00086** resembles **Document JNJ_00077** and notes that "[t]he eleventh report is attached." For the reasons that **Document JNJ_00077** must be produced, **Document JNJ_00086** must also be produced.

**Document JNJ_00089** resembles **Document JNJ_00077** and notes that "[t]he twelfth report is attached." For the reasons that **Document JNJ_00077** must be produced, **Document JNJ_00089** must also be produced.

**Documents JNJ_00092** and **JNJ_00093** contain an email from Nancy Sandall of Bell & Clements addressed to Hilary Brown of Johnson & Johnson regarding the settlement of Gilliard's claim. Defendant has represented that Bell & Clements is its agent or representative. However, it is not clear that the driving force behind preparation of these emails was litigation. Instead, they appear to have been created in the ordinary course of claim adjusting and payment. Therefore, these documents must be produced.

**Documents AHA_00071-00077** contain a seven-page expense report compiled by Michael Crouch of Adair Horne. Although the entire report was provided for *in camera* review, defendant has already produced **Documents AHA_00071-00074** to Gilliard. See Def.'s Mot. Quash Ex. D. In its First Supplemental Responses to Plaintiff's First Request for Production, defendant objected "to the production of the last two (2) pages of the Report, bates numbered AHA_00076 and AHA_00077, and the last thirteen (13) entries on the fifth page of the Report on the basis that they are subject to attorney client privilege and/or work product privilege in that all entries beginning March 22, 2012 were created on or after the filing of this action." Id. at 5-6.

Typically, expense records and reports will only be found protected when they reveal specific research or a litigation strategy. Chaudry v. Gallerizzo, 174 F.3d 394,

402-03 (4th Cir. 1999) (citing Clarke v. Am. Commerce Nat'l Bank, 974 F.2d 127, 130 (9th Cir. 1992)).  Mr. Crouch's expense report entries dated after the filing of the complaint do not reveal any specific research or litigation strategy.  While some entries relate to time spent contacting Attorney Pritchard, other entries concern Mr. Crouch's Seventh, Eighth, Ninth, Tenth, Eleventh, and Twelfth Reports that were created in the ordinary course of business of adjusting an insurance claim.  In his deposition, Mr. Crouch testified that he continued to prepare such Reports on a regular basis after the complaint was filed and in the normal course of business.  Mr. Crouch also testified,

> Q:	Do you think an insurance company has a continuing obligation to adjust a claim even after litigation has been commenced?
>
> A:	Sure.

Crouch Dep. 71:17-72:14.  Because the "driving force" behind Mr. Crouch's work was the ordinary course of business rather than litigation, the entire expense report must be produced.

## IV.   CONCLUSION

Based on the foregoing, the court **GRANTS IN PART** and **DENIES IN PART** plaintiff's motion to compel, **GRANTS IN PART** and **DENIES IN PART** defendant's motion to quash, and **ORDERS** that defendant produce the following documents within fifteen days of the filing of this order:  **Documents JNJ_00066**, **JNJ_00067**, **JNJ_00076**, **JNJ_00077**, **JNJ_00079**, **JNJ_00081**, **JNJ_00082**, **JNJ_00083**, **JNJ_00086**, **JNJ_00089**, **JNJ_00092**, **JNJ_00093**, and **AHA_00071-00077**.

**AND IT IS SO ORDERED**.

 

_____
**DAVID C. NORTON
UNITED STATES DISTRICT JUDGE**

**April 22, 2013
Charleston, South Carolina**